I respectfully dissent from the majority decision to reverse the Deputy Commissioner and would vote to affirm her denial since there is insufficient medical evidence to prove by the greater weight that plaintiff suffered an injury to his right eye during the 1 October 1992 explosion and, even assuming arguendo that plaintiff sustained a right eye injury, there is insufficient evidence to prove by the greater weight that it caused plaintiff a permanent impairment to his eye.
Plaintiff has a history of eye surgery in 1982 and 1983 for the removal of bilateral pterygia which usually produces scarring and in November of 1988 was treated for an abrasion of his right cornea. An ophthalmologist, Dr. Clark, operated and treated plaintiff for these conditions. On 6 October 1992, five days after the injury, Dr. Payne, an associate of Dr. Clark, noted scarring which he attributed to the earlier surgery but no foreign matter or new abrasion in plaintiff's eyes. On 11 November 1992, Dr. Clark attributed the scarring in both eyes to the prior surgery and the right corneal raised scar to a prior corneal abrasion in 1988. Dr. Anderson, an ophthalmologist who did not see plaintiff until three months later on 5 March 1993, had no explanation as to why the raised scar on plaintiff's right eye was present and could not attribute it to the explosion unless there was foreign matter in plaintiff's cornea resulting from the explosion. However, there is no evidence of record of any foreign matter being lodged in plaintiff's cornea as a result of the explosion other than plaintiff's testimony. Therefore, plaintiff's credibility is of utmost importance and, in fact, his testimony is contradicted by the medical evidence which is necessary to prove causation and by the testimony of a co-worker.
In addition, Dr. Anderson was of the opinion that an injury causing such a scar would result in immediate need for treatment. All three doctors agreed that such an injury would result in immediate pain, tearing, and redness. In the case at hand, plaintiff did not complain of pain, redness or tearing in his right eye and his right eye was not treated when he was seen at the emergency room directly after his accident. Furthermore, a co-employee who helped plaintiff's immediately after the accident did not notice anything with regard to plaintiff's right eye and plaintiff made no complaints to him with regard to his right eye. Therefore, the majority's reliance on the testimony of plaintiff that he immediately felt something in his right eye and that it itched, holds little weight since plaintiff's testimony is contradicted by the medical evidence, including the emergency room notes, and the testimony of his co-worker, Mr. Brown, which show that plaintiff did not have any foreign matter in his right eye and did not experience right eye problems immediately. Finally, it was not until one month later that plaintiff returned to Dr. Payne and complained of pain, redness, and tearing in his right eye which started a day earlier and was diagnosed as viral conjunctivitis unrelated to trauma. This sequence of events is contrary to the findings and conclusions of the majority.
Furthermore, after plaintiff's 1988 abrasion, his right eye was 20/40. At the time that Dr. Anderson examined him after his injury by accident, plaintiff's vision was 20/50 in his right eye. Due to the fluctuations in plaintiff's right visual acuity following the explosion and during the virus he suffered, and since Dr. Anderson did not know what plaintiff's visual acuity was prior to the explosion, there is insufficient evidence to determine by the greater weight that, even assuming arguendo that plaintiff sustained an injury to his right eye, the amount of permanent impairment to his right eye. In any event the most permanent partial disability to which plaintiff would be entitled is 7.1% [(20/50 = 23.5%) — (20/40 = 16.4%)] that is, 8.52 weeks.
Based on the foregoing, I and would vote to affirm the Deputy Commissioner.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER